### CRANE ELEVATOR CO. v. LIPPERT.

(Circuit Court of Appeals, Seventh Circuit. October 1, 1894.)

No. 119.

1. NEGLIGENCE—OBSTRUCTION OF PASSAGEWAY.

One who negligently places obstructions in the hall of a building is liable to an employé of a tenant of the building who is injured thereby, since such obstruction constitutes a breach of the duty of the owner to keep such hallway open to the use of the tenants.

2. SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

A boy while walking slowly through an unlighted hall, in the dark, stumbled over an obstruction, and was injured. He could not see the obstruction, but he knew it was there, and he tried to go around it, but miscalculated the distance. *Held*, that the question of contributory negligence was for the jury.

3. SAME—REMOTE AND PROXIMATE CAUSE—INJURY TO DISEASED PERSON.

Where a person, at the time of receiving a personal injury, has microbes in his system, which aggravate the injury, that fact does not relieve from responsibility the person whose negligence caused the injury, where it does not appear that the microbes would have done harm by themselves.

In Error to the Circuit Court of the United States for the Eastern District of Wisconsin.

Action by Frank Lippert against the Crane Elevator Company for personal injuries. Plaintiff obtained judgment. Defendant brings error.

This was an action commenced in a state court, and removed thence into the court below. The defendant in error, through his guardian ad litem, brought suit against the plaintiff in error to recover damages for personal injuries alleged to have been caused by its negligence. The defendant in error, who was 15 years of age, was at the time of his injury, September 12,

1891, employed as a check boy in the office of the Western Union Telegraph Company, which was located in room 6 on the basement or ground floor of the Chamber of Commerce building, in Milwaukee, Wis. The office has two entrances or exits,—one opening from and upon the public sidewalk along Michigan street, and being the only entrance and exit of customers of the Western Union Telegraph Company; and the other opening from and into the main or central hall, located on the basement or ground floor of said building, and being the only mode or way of ingress and egress into and from said office for the servants and employés of said Western Union Telegraph Company. The basement or ground floor of the Chamber of Commerce building is occupied by various offices and rooms used for business purposes, opening into said main or central hall, and from which a stairway ascends to the upper floors of said building. The hall is of the width of about 20 feet, and had been for a long time used as a common thoroughfare for all persons employed in said offices and rooms, and for all persons having occasion to call upon them. It was the only passageway or thoroughfare by which any employés or servants of the Western Union Telegraph Company, or those calling upon them, could enter or leave the office and operating room of said telegraph company. The various offices and rooms on the basement or ground floor of the Chamber of Commerce building are occupied by tenants of the owner of the building. Prior to the 1st day of September, 1891, the plaintiff in error had entered into a contract with the owner of the Chamber of Commerce building to take down and remove the old elevator, and put up a new one in its place. The materials composing the old elevator, by the terms of the contract, became the property of the plaintiff in error. Some two weeks prior to the injury complained of, the plaintiff in error had taken down the old elevator, and placed the materials composing it in the main or central hall. These materials, consisting of timber, iron, and machinery, were placed on the side of the hall adjoining the room occupied by the telegraph company, about 5 or 6 feet from the doorway leading into the telegraph office, and extending thence, in the direction of the exit from said hall, a distance of about 18 or 20 feet, and extending out into the hall from 4 to 6 feet, and they were heaped up from 18 inches to 3 or 4 feet in height. It is not shown whether these materials were placed in the hall with the previous consent of the owner of the building or not, but they remained there for such a length of time before the injury happened that he would be chargeable with knowledge of their presence there. This mass of materials was left in the hall without any guard rail around it, and without any light or warning of any kind being provided by the plaintiff in error, aside from any light which may have been kept there at times by the owner of the building.

The defendant in error was the only witness testifying touching the circumstances connected with this injury. He testified that he had been at work in the Western Union Telegraph office for about 2 years before the time of the accident, and was 15 years of age. He went to work at the usual time, 5 o'clock and 30 minutes, p. m. of September 11th, and left work at 1 o'clock a. m. of September 12th. He further testified as follows: "I took my hat, and went out into the hall. I thought I had gone far enough to avoid the articles lying around the hall. Then I started walking down the hall slowly, until I came to the Board of Trade window. I tripped and fell, and struck my shoulder on some iron material lying around there. Then I got up and walked out; went home, and my mother put some liniment on my shoulder, and all along to the elbow. * * * I went to work the next day at 5:30 p. m. I worked about an hour, and then I could not stand it any longer, and asked to be excused. I remember when the new elevator was put in the Chamber of Commerce building. It was two weeks or more before the 12th of September, 1891. * * * The office of the Western Union Telegraph Company is on the west side of the building, extending from the front to the rear on the ground floor. At the time I fell, there was only one door by which I could go into the operating room, and that was at the end of the corridor. * * * On the evening of the 11th of September, I went into the Chamber of Commerce building by the alley entrance. I walked east, and then turned and walked south, up to the door of the operating

room. There were planks, cables, and iron materials lying on the west side of the wainscoting, and extending at the furthest point about five or six feet from the wainscoting, towards the center of the corridor. * * * The corridor had been piled up this way for two weeks or more. When I came out at one o'clock in the morning, there was no light at all in the corridor. I could not see anything. I knew the rubbish was there, and I thought I went far enough away from it, so as not to be caught on it. I tried to get away from it. I went five feet from the door, towards the east; then I walked nearly down to the turn, and was going to go out to the alley entrance. Before I got there I fell, right near to the Board of Trade window. I walked slow because I knew these things were lying around. So I tried to be careful. There were no red lanterns, or any kind of a light. The gas jet in the hall was not lighted. The gas jet was about four feet from the wall above. I could not reach up to the gas jet." Upon cross-examination he further testified: "So far as I know, the pile was just the same when I went out as when I went in. I cannot tell whether it had been touched for some days or not. It was about the same. There is usually one gas jet burning when I come out at one o'clock. The one at the crossing of the T. * * * I do not remember whether there was a light there or not Friday night, when I went in. * * * The light in the hall was usually lighted, but I often saw it out, too. I don't know who put it out. I never saw them put it out. When the light is burning, I can see the material." In addition to the testimony of the defendant in error with respect to the lighting of the hall, a number of other witnesses testified on that subject. Some of them testified that the hall usually had a light burning at 5:30 p. m., but generally it was not lighted at 1 o'clock a. m. Others testified that a light was kept burning in the hall all night, and if, by accident, the light went out, it was relighted by the watchman of the building. As to the character of his injuries, he testified that he fell, and struck his shoulder upon some iron. He got up, and walked home. He felt some pain in his arm, below the shoulder. It was swollen the next day, but he returned to work, and after working about an hour he went home, and went to bed. About four days after a doctor was called. His arm was then badly swollen. After treatment by two or three different physicians, he went to the hospital, November 19th, where he was operated on by a surgeon. He was in bed at the hospital about a month, and had to carry his arm in a sling until after Christmas. About a week before leaving the hospital, a piece of diseased bone was taken out of his arm. It gradually healed up. His arm has often pained him since he left the hospital. It pains him most when he has taken cold. He cannot bear his weight on the arm. He has a pretty good arm, considering the injury and the amount of destruction of bone. Whether the usefulness of his arm would be permanently impaired or not was a disputed question. Since his discharge from the hospital he has worked about six or seven weeks. The medical testimony tended to show that, when admitted to the hospital, he was suffering from tubercular osteomyelitis, resulting from the presence of microbes or tuberculous germs in his system; that, if these microbes or germs had not been present in his system, the fall and consequent bruise would not have resulted in the serious injury from which he suffered.

George H. Noyes, for plaintiff in error.

Kate H. Pier (Edward S. Bragg, of counsel), for defendant in error.

Before WOODS, Circuit Judge, and BAKER and SEAMAN, District Judges.

After making the foregoing statement of facts, the opinion of the court was delivered by

BAKER, District Judge. The plaintiff in error contends that no contract relation existed between it and the defendant in error, and that the injury complained of did not arise out of, or occur in consequence of, any privity of contract between it and the defendant in

error, and hence that no duty is shown, the violation of which gave him a right of action in this case. It is also insisted that the remedy which the defendant in error might have had against the owner of the building or his employer does not extend to a recovery against the plaintiff in error. It is firmly settled that, in order to maintain an action for injury to person or property by reason of negligence or want of due care, there must be shown to be existing some obligation or duty towards the plaintiff, which the defendant has disregarded or violated. This is the basis on which the cause of action must rest. There can be no fault or negligence or breach of duty where there is no act or service or contract which the party is bound to perform. Whenever a party is sought to be charged on the ground that he has caused a way or other place to be incumbered, or suffered it to be in a dangerous condition, whereby an injury has been occasioned to another, the right of action therefor is bottomed on the principle that the negligence complained of consists in doing or omitting to do an act by which a duty imposed by law, or growing out of contract, has been violated. A trespasser who comes upon the land of another without right cannot maintain an action if he runs against an obstruction or falls into an excavation there situated. The owner owes no duty to a wrongdoer to provide safeguards for his protection. So, also, a licensee who enters on the premises of another by permission only, without any allurement, enticement, or invitation being held out to him by the owner or occupant, cannot recover damages for injuries caused by obstructions or excavations. He goes at his own risk, and enjoys the license subject to its attending perils. Railroad Co. v. Griffin, 100 Ind. 221; Reardon v. Thompson, 149 Mass. 267, 21 N. E. 369; Byrne v. Railroad Co., 104 N. Y. 362, 10 N. E. 539. This is so because no duty is imposed by law or contract on the owner or occupant to keep his premises in a safe condition for those who come there solely for their own convenience or pleasure, and who are not either expressly or impliedly invited or induced to come upon them by the purpose for which the premises are appropriated or occupied, or by such adaptation of the place for use by others as might naturally and reasonably lead them to suppose that they might properly and safely enter thereon. The owner of a building occupied by a tenant owes him and those employed by such tenant the duty not to expose them to a dangerous condition of the place which reasonable care on his part would have prevented. Holmes v. Drew, 151 Mass. 578, 25 N. E. 22; Leydecker v. Brintnall, 158 Mass. 292, 33 N. E. 399. The telegraph company, and those employed by it, had a right to the use of the hall, for all lawful purposes, free from dangerous obstructions, so far as ordinary and reasonable care could provide against them. It acquired this right as an incident of its tenancy, and this right also inured to the benefit of its employés and servants. Neither the owner of the building, nor another by his authority, had the right to place an obstruction in the hall which would endanger the safety of those having lawful occasion to pass through it while in the exercise of due care. If the plaintiff in error placed the obstructions complained of in the hall

under a grant of authority from the owner of the building, its duties and responsibilities were coextensive with those of its grantor. If it placed the obstructions in the corridor without the consent of the owner of the building, its responsibility to the defendant in error for his injury would assuredly be no less than if it had acquired such consent. These principles are illustrated and applied in many English and American cases, one of which (Corby v. Hill, 4 C. B. [N. S] 562, cited and approved in Bennett v. Railroad Co., 102 U. S. 577) it will be sufficient to examine. That was an action for an injury sustained by the plaintiff while traveling upon a private way leading from a public turnpike to a certain asylum, and over which persons having occasion to visit such building were likely to pass, and were accustomed to pass, by leave of the owners of the soil. The defendant negligently obstructed the way, by placing thereon certain materials, without giving notice or warning of the obstruction by light or other signal, and by reason thereof the plaintiff's horse was driven against the obstruction and injured. One of the pleas was that the defendant had placed the materials on the way by the license or consent of the owners of the soil. Upon the argument of the case, counsel for the defendant contended that the owners of the soil, and consequently, also, any person having leave or license from them, might, as against other persons using the way by the like leave and license, place an obstruction thereon, without incurring responsibility for an injury resulting therefrom, unless in the case where an allurement or inducement was held out to such other person to make use of the way. Upon the general question, as well as in answer to this argument, Cockburn, C. J., said:

"It seems to me that the very case from which the learned counsel seeks to distinguish this is the case now before us. The proprietors of the soil held out an allurement, whereby the plaintiff was induced to come upon the place in question. They held out this road, to all persons having occasion to proceed to the asylum, as the means of access thereto. * * * Having, so to speak, dedicated the way to such of the general public as might have occasion to use it for that purpose, and having held it out as a safe and convenient mode of access to the establishment, without any reservation, it was not competent for them to place thereon any obstruction calculated to render the road unsafe, and likely to cause injury to those persons to whom they held it out as a way along which they might safely go. If that be so, a third person could not acquire the right to do so under their license or permission."

In the same case, Williams, J., said:

"I see no reason why the plaintiff should not have a remedy against such a wrongdoer, just as much as if the obstruction had taken place upon a public road. Good sense and justice require that he should have a remedy, and there is no authority against it."

The defendant in error, as the employé of the telegraph company, had the right to use the hall, for the purpose of travel to and from his place of employment, free from dangerous obstructions, as against the owner of the building or his licensee, as well as against one obstructing it without any claim of right. The plaintiff in error, in obstructing the hall, was guilty of an invasion of the right of the defendant in error to its free and unobstructed use. The case of

Winterbottom v. Wright, 10 Mees. & W. 109, and other cases cited and relied on by counsel for the plaintiff in error, are not applicable to the present case. That case, and others like it, denied a remedy on the ground that at the time of the happening of the negligent act the defendant owed no duty arising out of contract or imposed by law, in respect to the person injured. There being no breach of duty, it was held that there was no right of action. In the case before us there was a duty owing to the defendant in error, coupled with its breach, from which a right of action arose in his favor, if he was free from contributory negligence. Having placed obstructions in the hall, the duty rested upon the plaintiff in error to exercise reasonable care and prudence to protect from injury those having lawful occasion to use it, by means of lights or other suitable safeguards. This duty required the exercise of care and diligence on its part in proportion to the danger occasioned by the presence of these obstructions. It saw fit wholly to neglect the performance of this duty. It relied upon the lighting of the hall by the owner of the building as the sole means of protection against injury from these obstructions. Having intrusted to another the discharge of a duty resting upon itself, the plaintiff in error is responsible for a failure in its performance. The evidence touching the manner of the performance of this duty was conflicting, and, under instructions as favorable to the plaintiff in error as it was entitled to ask, the jury have found that there was negligence.

It is the settled doctrine of the federal courts that the burden of showing contributory negligence rests upon the defendant. Unless, from the evidence in the case, contributory negligence is affirmatively disclosed, the plaintiff is entitled to recover, upon proof of actionable negligence on the part of the defendant resulting in injury. Contributory negligence is claimed to have been affirmatively shown in the testimony of the defendant in error. It has been well said:

"There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under all the circumstances. The terms 'ordinary care,' 'reasonable prudence,' and such like terms as are applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions of the court. It is their province to note the special circumstances and surroundings of each particular case, and then to say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court." Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679.

An adult must use that degree of care and attention for his own protection that is ordinarily exercised by persons of intelligence and discretion. In infants and children of immature judgment, less discretion is required, depending upon age and intelligence in each

particular case. Railroad Co. v. Gladman, 15 Wall. 401. Here a boy 15 years of age, having knowledge of the obstruction of the hall, and that it is not lighted, is injured in attempting to pass through it. He was not bound, under the circumstances, to remain shut up in the office all night. He had a lawful right to use the hall for the purpose of exit, notwithstanding its obstruction. He was bound to use due care to avoid injury, in view of all the circumstances and surroundings, taking into consideration his age and intelligence. The jury saw the boy before them, they heard him testify, and were enabled to form a more accurate judgment in regard to his intelligence and capacity to exercise care and avoid injury than we can. He testified that he exercised his best judgment, and traversed the corridor with care. He walked, as he supposed, sufficiently far towards the east side of the hall to carry him beyond the obstructions, which occupied its west side to the distance of four or five feet. The obstruction with which he came in contact was some distance down the hall from the place where he entered it, and he could only be guided by his judgment as to the distance in walking to reach a point to pass it. He moved slowly and carefully. He misjudged the distance, and, as a result, fell upon the iron and material which the plaintiff in error had placed in the hall. We do not think the facts are such that all reasonable men must draw the conclusion that the boy, considering his age and intelligence, was guilty of negligence, under the circumstances. As different conclusions may be drawn as to whether he used due care or not, the question was one whose determination belonged to the jury. The instructions of the court fairly presented this question to the jury, and by their verdict they have found that he was free from contributory negligence. The court having correctly instructed the jury on the subject of contributory negligence, and the question being one for their determination, their verdict is conclusive here, although not in the court below.

The plaintiff in error further contended on the oral argument that the injury sustained by the defendant in error was not the proximate result of his fall, but arose from the presence of tuberculous germs in his system. It was the hurt occasioned by the fall which afforded an opportunity for the active development of the poisonous germs which had theretofore been innocuous. It was the wrongful act which gave rise to the consequent injury, and it is not apparent that the injury would have occurred in the absence of such cause. In the case of Railway Co. v. Kellogg, 94 U. S. 469, 475, it is said:

"When there is no intermediate, efficient cause, the original wrong must be considered as reaching to the effect, and proximate to it. The inquiry must therefore always be whether there was any intermediate cause, disconnected from the primary fault, and self-operating, which produced the injury."

The wrongful act of the plaintiff in error subjected the injured party to other and dependent causes, which were set in motion by the original hurt. For this it is answerable. Ginna v. Railroad Co., 67 N. Y. 596; Drake v. Kiely, 93 Pa. St. 492; Brown v. Railway Co., 54 Wis. 342, 11 N. W. 356, 911; Railway Co. v. Buck, 96 Ind. 346.

The plaintiff in error also complains of the refusal of the court to charge the jury, upon its request, as follows:

(1) "We think the decided weight of authority is in favor of the rule that, in an action of negligence, the defendant has the right to have the question submitted to the jury whether the result which is the ground of action might, under all the circumstances, have been reasonably expected, not by the defendant, but by a man of ordinary intelligence and prudence." (2) "It is generally held that, in order to warrant a finding that negligence of an act not amounting to wanton wrong is the proximate cause of the injury, it must appear that the injury was the natural and probable consequence of negligence or wrongful act, and that it ought to have been foreseen, in the light of the attending circumstances."

It is not necessary to express any opinion in regard to the accuracy of the above propositions of law, or in regard to their applicability to the facts of the case. The plaintiff in error failed to reserve any exception to the refusal of the court to give them in charge to the jury. It will not now be heard to allege error upon any ruling to which it did not, at the proper time, reserve an exception.

The instructions of the court were in harmony with the foregoing principles, and a careful examination of them fails to disclose any substantial error. All of the alleged errors argued by counsel have been considered by the court, and we find no prejudicial error in the record. The judgment below is affirmed, at the costs of the plaintiff in error.