CLEVELAND, C., C. & ST. L. RY. CO. v. BALLENTINE.

(Circuit Court of Appeals, Seventh Circuit. February 16, 1898.)

No. 450.

NEGLIGENCE—PERSONAL INJURIES.

A boy of 17½ years, who, out of curiosity, goes upon the premises of a railroad company to witness the accidental burning of a train of tank cars, filled with petroleum, assumes the risks of the situation; and, though he voluntarily renders some services in preventing the spread of the fire to other property, he cannot recover against the company for injuries caused by an explosion of one of the cars.

In Error to the Circuit Court of the United States for the Southern District of Illinois.

On the morning of January 31, 1893, the Southwestern Limited, a passenger train of the plaintiff in error, hereinafter called for brevity the "Railway Company," bound from St. Louis to Indianapolis and the east, by reason of a switch negligently left open, ran upon a siding, and collided with a train of 18 oil-tank cars, filled with petroleum oil, standing in the yards of the company at Wann, now East Alton, about 20 miles from East St. Louis. These yards were over 3,500 feet in length north and south, and over 625 feet in width. There were within the yards three small houses belonging to the Railway Company and some old stock pens and stock sheds. By reason of the collision, the forward end of the engine was driven through the end of an oil tank, and fire was communicated to the train of oil-tank cars. The passenger train, or such portion of it as had not taken fire from the collision, was moved away from the scene of the fire by means of a switch engine, and 10 of the oil-tank cars within a short time were also removed, leaving 8 oil-tank cars which were on fire. The smoke of the conflagration was dense and black, and the flames and smoke could be seen a long distance. The fire attracted the curiosity of a large number of people, and the yards were soon and during the entire forenoon occupied by from two to three hundred persons. This crowd was at different times during the forenoon warned by the servants of the Railway Company that there was danger of explosion. Hamilton S. Ballentine, the defendant in error, was a young man then 17½ years

of age, and at the time was working on the farm of his cousin, John Henry, about 2½ miles distant from these yards. They both observed from the farm the ascending smoke, and drove to a store at Wann, where they fastened their horse and proceeded to the scene of the wreck. This store was 1,000 feet distant from the fire, and was not in danger. The two remained at the wreck as curious observers of the conflagration for nearly an hour, and then returned to the store. At 11 o'clock the two drove down the highway to the crossing of the railway at the south end of the yards, and the crossing being obstructed by an engine, as they claimed, they fastened the horse to a telegraph pole, and proceeded upon foot north along and upon or near the railway tracks towards the scene of the conflagration. While walking close to the tracks, and not far from the burning tanks, and between the bank on the west and the tracks, a certain farmer who was acquainted with Henry called to him and others to come up and "help put out these stock pens." Ballentine and Henry went to the stock pens, which were near the track upon which stood the burning oil-tank cars, and some one,—Ballentine said a man whom he thought was Moline, the section foreman,—gave Henry a spike hammer, and the latter commenced to knock planks off the stock pens, and Ballentine assisted to carry them away from the fire. After thus working a half hour, Ballentine raked the leaves away, and, having concluded that work, he stood not far from the burning oil-tank cars, "cooling off," when one of the tanks of oil exploded, sending forth a dense smoke and flame of burning oil, which fell upon him, inflicting serious injury. Ballentine had lived with his cousin upon this farm for about two years. Before that time he had lived in the city of Philadelphia, and had attended the public schools of that city until he was 15 years of age. When Ballentine went upon the tracks the second time the 8 oil-tank cars were on fire. The smoke and flame of the burning ascended 30 feet in height, and were accompanied with a loud roaring, hissing, intermittent noise. The fire, it seemed, would first catch in the vent of the tanks, and, the seams of the tanks opening, the gas would shoot out with a loud hissing noise, as one witness describes, "as though many locomotives were blowing off steam at once." Ballentine saw all this, but states in his testimony that he had understood the tanks were empty. The action is brought to recover damages for the injuries thus sustained. The declaration contains five counts, to each one of which a demurrer was interposed and was overruled. The first count avers the negligent collision, and that the Railway Company carelessly allowed the cars to remain on the siding exposed to the fire, and suffered the fire to burn and heat the tanks, whereby an explosion resulted, and injured Ballentine, who "was then and there exercising due care and caution." The second count alleges the negligent collision; that the fire could have been extinguished by the exercise of care and caution, but was negligently suffered to spread, and heat and explode the oil tank, whereby Ballentine, then and there lawfully passing along the public highway, "was prevented by said collision and fire from crossing the track of said railroad which was obstructed thereby, and who had no reason to suppose he was exposing himself to danger by so doing, and who was then and there in the exercise of- due care and caution, was suddenly and unexpectedly smitten and enveloped by the said flames, and was thereby burned," etc. The third count is like the first count, with the addition that the sevants of the Railway Company represented to Ballentine "that there was no danger; that the tanks contained cotton-seed and black oil; and that said tanks would not explode." The fourth count is like the first, with the additional averment that Ballentine was employed and ordered by the Railway Company to work for it in and about saving and preventing the loss and destruction from fire of its property, which he immediately, at the request of the defendant, then did, and that the Railway Company carelessly and negligently failed and neglected to notify Ballentine of the danger of the employment he was about to undertake, but negligently and carelessly represented and assured him that there was no danger that the tanks would explode, and that the contents thereof were not of a dangerous or explosive character. The fifth count is like the first, with the additional averment that Ballentine, in the exercise of due care and caution, was engaged and worked in putting out the fire, preventing the fire from spreading, and that he was wholly ignorant of the dangerous and

explosive quality and character of the contents of the tanks, or that there was danger of the tanks bursting or exploding. At the trial, upon the conclusion of the evidence, the court was requested by the Railway Company to instruct the jury to find the defendant not guilty. This request was refused, and an exception was taken. A verdict was rendered in favor of Ballentine, the plaintiff below, and the cause is brought here for review. Many errors are assigned upon the admission of evidence and the instructions of the court. The foregoing statement will, however, sufficiently indicate the grounds upon which the judgment of the court proceeds.

John T. Dye and George T. McNulty, for plaintiff in error.

James W. Patton, for defendant in error.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

JENKINS, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

We dismiss without remark the consideration of the second and third counts of the declaration, because there is entire absence of evidence to sustain the allegation of the second that he was upon the highway at the time of this injury, or of the third that the servants of the company represented to him that there was no danger, or that the tanks contained cotton-seed and black oil, and would not explode. The first and fifth counts will be considered together, and the fourth count by itself.

We ruled in Goodlander Mill Co. v. Standard Oil Co., 24 U. S. App. 7–12, 11 C. C. A. 255, and 63 Fed. 401, that "it is not every one who suffers loss from another's negligence who may recover therefor. Negligence, to be actionable, must occur in breach of a legal duty arising out of contract or otherwise, owing to the person sustaining the loss. Kahl v. Love, 37 N. J. Law, 5; Bank v. Ward, 100 U. S. 195. Mr. Wharton defines 'legal duty' to be 'that which the law requires to be done or forborne to a determinate person, or to the public at large, and as correlative to a right vested in such determinate person or the public at large.' Whart. Neg. (2d Ed.) § 24." We are to deal with legal, and not moral, obligations. We have therefore to inquire, first, whether, upon the assumption that there was no contractual relation between Ballentine and the Railway Company, there was in the distressing occurrences of this conflagration violation of any legal duty owing by the former to the latter, operative to his injury as a proximate and natural cause of that injury. The collision and the resulting fire were caused by the misplacing of a switch, presumably the negligent act or omission of a servant of the Railway Company. That negligent act or omission, however, was not in breach of any duty owing to Ballentine, and as to him was innocuous, he being two miles away at the time and unaffected thereby. He came upon the scene afterwards, and while the conflagration was in progress. He went upon the grounds of the Railway Company where he had no right to be, and going there, at best, as a mere licensee, he was bound to take things as he found them, and he assumed the risk of the situation. Elevator Co. v. Lippert, 24 U. S. App. 182, 11 C. C. A. 521, and 63 Fed. 942. So it is held that firemen entering upon premises to extinguish a conflagration and to save property do so, not by permission or invita-

tion of the owner, but under license of the law, and they also must take the risks as they find them. Woodruff v. Bowen, 136 Ind. 431, 34 N. E. 1113; Gibson v. Leonard, 143 Ill. 182, 190, 32 N. E. 182. Ballentine went upon the grounds of the Railway Company impelled by natural curiosity. The danger was obvious. There was no concealment of explosives. The peculiar construction of the tanks declared the character and quality of their usual contents. We held in Goodlander Mill Co. v. Standard Oil Co., supra, that petroleum oil is not a dangerous agency, within the rule that he who uses it does so at his peril, and must respond to the injuries thereby occasioned not caused by external natural occurrences or by the interposition of strangers. It is dangerous when, in considerable quantity, it is brought in contact with fire. This is matter of public and general knowledge, of which no American schoolboy of the age of 15 years can be presumed to be ignorant, and knowledge of which seems only to be ignored by the stupid servant who, in spite of repeated warnings, pours the fluid upon the fire, as we are periodically advised by the press. The scene itself was a signal of danger. The hissing, roaring, escaping gas should have proven a sufficient warning. It is impossible to credit the statement of Ballentine that he understood the tanks were empty. The obvious situation showed that that could not be so. The case, therefore, so far as presented by the first and fifth counts of the declaration, and by the evidence to sustain them, was this: That Ballentine, impelled by curiosity to witness a great conflagration, went upon the grounds of the Railway Company, to the scene of it, in the face of obvious danger of explosion. He went without inducement or invitation, without legal right, and assumed the perils of the situation. He voluntarily and negligently exposed his person to danger. "Volenti non fit injuria." The Railway Company owed to him no active duty,—only the duty to abstain during his presence on the premises from positive wrongful act which might result in injury to him. It was not bound to remove the burning cars to another part of its yards, either in the discharge of any duty towards him, or, so far as the record discloses, in discharge of duty towards any one. All was done that could reasonably be demanded when general and repeated warnings were given of danger from explosion. The company was not in duty bound to engage a constabulary force to drive the crowd from its premises. We perceive no grounds in the allegations of the first and fifth counts, or in the evidence produced to uphold them, upon which Ballentine could rightfully recover for the injury he sustained.

It is urged that under the fourth count this judgment can be upheld because Ballentine was employed to assist in the removal of the stock pens, and he, being ignorant of the qualities of petroleum, was not previously warned of the danger, but that the Railway Company assured him that the contents of the tanks were nonexplosive. It might suffice to say that we are of opinion that there is no evidence to sustain the finding that he was employed by the Railway Company. In the excitement of a great fire, at the suggestion of one who had no connection with the Railway Company, Ballentine

accompanied his cousin to assist in removing certain structures. He was a volunteer. His act was doubtless impelled by generous and laudable motive to assist in preventing the spread of the fire, as at every fire volunteers are not wanting to assist in staying the ravages of a conflagration. Assuming, however, that he may be deemed a servant of the company pro hac vice, we fail to observe any failure of duty upon the part of the Railway Company. As we have said, the danger was obvious, and it certainly cannot be that in the heat and excitement of the occasion it was the duty of the Railway Company, by its officers, to ascertain if each volunteer was possessed of knowledge common to all, and to carefully instruct each person, whom it might permit to assist, in the properties of petroleum oil and of its liability to explosion before it allowed him to engage in the work of removing the structures. If Ballentine can be treated as a servant of the company for the particular work he did, he entered into the service, subject, at least, to its obvious perils. There is no evidence of any representation to him that the contents of the tanks were not of a dangerous or explosive character, or that no explosion need be apprehended. He states that he understood the tanks to be empty. He does not state from whom he obtained such information, and, as we have observed, such information was opposed to the manifestations of his own senses of sight and hearing. We are of opinion that the court below should have directed a verdict of not guilty. The judgment will be reversed, and the cause remanded, with directions to award a new trial.