MARY E. SAXON, Appellant, v. THE ST. LOUIS TRANSFER COMPANY, Respondent.

St. Louis Court of Appeals. Argued and Submitted November 1, 1909.   Opinion Filed November 30, 1909.

1.   NEGLIGENCE: Transfer Company: Improper Placing of Articles Delivered: Contractual Relation: Injury to Third Party.   A consignee of freight notified a transfer company to deliver a box to his residence number, which was an up-stairs flat. The driver for said company refused to take it to the up-stairs landing, and deposited it on the landing of the first floor. The box was three and one-half feet high and the space between it and the wall was ten to twelve inches wide. An occupant of the building, while attempting to pass through this space, lost her balance and in trying to save herself, placed her hand on the corner of the box, which tilted forward, so that she fell and was injured. In a suit against the transfer company to recover damages for such injuries, Held, plaintiff could not recover for failure of defendant to deliver the box at the place called for in the dray.ticket and at which it was directed to deliver by the consignee, the only person who could complain of this breach of duty being the consignee.

2.   ———: ———: ———: Liability.   In such a case, if the box was placed in the passageway in such a position that it was the immediate cause of the injuries complained of, and if defendant maintained it there to the time of the accident, it would be liable, whether the accident was caused by the first placing of the box or by its subsequent maintenance.

3. ———: ———: ———: ———: **Proximate Cause.** A con-
signee of freight notified a transfer company to deliver a box to
his residence number, which was an upstairs flat. The driver
for said company refused to take it to the upstairs landing, and
deposited it on the landing of the first floor. The box was three
to three and one-half feet high and the space between it and
the wall was ten to twelve inches wide. An occupant of the
building, while attempting to pass through the space, lost her
balance and in trying to save herself, placed her hand on the
corner of the box, which tilted forward, so that she fell and was
injured. In a suit against the transfer company to recover
damages for such injuries, *Held* that the responsibility and
control of the transfer company over the box ceased with its
delivery to the consignee, and that the accident happened by
reason of the box being left at the place it was deposited
and hence defendant is not liable.

*Held,* by GOODE, J. (concurring) That a man of common pru-
dence would not have anticipated danger of injury to any
one attempting to pass between the box and the wall, and
hence there was no negligence on the part of defendant
which was the proximate cause of plaintiff's injury.

Appeal from St. Louis City Circuit Court.—*Hon. Geo. H. Shields,* Judge.

AFFIRMED.

*Hall & Dame* and *R. B. Haughton* for appellant.

(1) On a demurrer to the evidence, every pre-
sumption will be indulged in favor of the plaintiff.
(2) The defendant, having placed the obstruction on
the landing, cannot escape liability by transferring the
possession of it to another. Even inability to remove
the obstruction after delivery to another is no excuse.
Tate v. Railroad, 64 Mo. 149; Young v. Oil Co., 185 Mo.
634; Colby v. Hill, 4 C. B. (N. S.) 554; Thompson v.
Gibson, 7 M. & W. 455; Railroad v. Lockery, 12 Tex.
Civ. App. 229; Hardin v. St. Claire, 115 Cal. 460;
Brown v. Woodworth, 5 Barb. 550; Crane El. Co. v.
Lippert, 11 U. S. C. C. A. 521; Cobb v. Smith, 38 Wis. 21;
Smith v. Elliott, 9 Pa. St. 345; Shearman and R. on
Neg. (5 Ed.), sec. 345; Norwalk Co. v. Norwalk, 63

Conn. 496; Village of Jefferson v. Chapman, 127 Ill. 438; Roswell v. Prim, 12 Mod. 635; Plumer v. Harper, 3 N. H. 88; Hyde Park Co. v. Porter, 167 Ill. 276; Colgrove v. Smith, 102 Cal. 220; Leslie v. Paints, 4 Taunt. 649; Bishop v. Trustees, 28 L. J. Q. B. 215; Eberson v. Continental Inv. Co., 118 Mo. App. 67; Staple v. Spring, 10 Mass. 77. (3) An analogous principle obtains in landlord and tenant cases. The landlord cannot shift liability for improper condition of the premises by delivering possession to the tenant. Gordon v. Pulitzler, 56 Mo. App. 599; Stoetzle v. Swearingen, 90 Mo. App. 588. (4) By turning over the possession to Mrs. Kramer the defendant merely constituted her its agent. Loth v. Columbia Thea. Co., 197 Mo. 328; Eberson v. Continental Inv. Co., 118 Mo. App. 67. (5) The plaintiff had a clear individual right in the passageway. No one could authorize an obstruction of it except the plaintiff. 23 Am. and Eng. Ency. Law (2 Ed.), pp. 4, 8, 13, 14 and note; 30 Am. and Eng. Ency. Law (2 Ed.), p. 441; 15 Am. and Eng. Ency. Law (2 Ed.), p. 492; Hardin v. Sinclaire, 115 Cal. 460; Power v. Dean, 112 Mo. App. 288; Jones on Easements, sec. 873; Anthony v. Building Co., 188 Mo. 704; Young v. Waters-Pierce Oil Co., 185 Mo. 634; Crane Elevator Co. v. Lippert, 11 U. S. C. C. A. 521; Colby v. Hill, 4 C. B. (N. S.) 554. (6) The rule here is similar to and in fact stronger for the plaintiff than that applying in cases of public highways. As between plaintiff and defendant, delivery to Mrs. Kramer did not release defendant. Johnson v. County, 61 Iowa 89; Pagels v. Oaks, 64 Iowa 198; Lazzell v. Garland, 44 W. Va. 446; Lewis v. Washington, 5 Watt. (Va.) 265; Colby v. Hill, 4 C. B. (N. S.) 554; Buesching v. Gaslight Co., 73 Mo. 219; Loth v. Theatre Co., 197 Mo. 328; Hardin v. Sinclaire, 115 Cal. 460. (7) Long continuance does not limit the liability. In addition defendant was specifically told, by Mrs. Kramer, that she could not move

the box. 6 Pattison's Digest, p. 760; Shearman and R. on Neg. (5 Ed.), sec. 374; Powers v. Insurance Co., 91 Mo. App. 55. (8) If the act is unlawful, or may become so in its execution, or may cause danger to others, liability cannot be shifted. (Authorities. supra.) The act here is not delivering the crate from the wagon, but leaving it on the landing. (9) The leaving of the crate on the steps by the defendant, in a dangerous position, which was not discovered with the use of ordinary care by the plaintiff, was the proximate cause of the injury. Lore v. Mfg. Co., 160 Mo. 608; Musick v. Pkg. Co., 58 Mo. App. 325; Kube v. Transit Co., 103 Mo. App. 591; Dutro v. Railroad, 111 Mo. App. 258; Heydt v. Bakery Co., 108 S. W. Rep. 64. Jensen v. Thomas, 81 Fed. Rep. 578; Crawford v. Stockyards Co., 114 S. W. Rep. 1057; Smith v. Fordyce 190 Mo. 1; Breman v. St. Louis, 92 Mo. 482; McDermott v. Railroad, 87 Mo. 285; Doss v. Railroad, 116 S. W. Rep. 485; Boyce v. Railroad, 120 Mo. App. 168; Hull v. City of Kansas, 54 Mo. 598; Ashby v. Gravel Road Co., 99 Mo. App. 178. (10) Intervening causes do not relieve defendant. Gibney v. State, 137 N. Y. 1; Easton v. Railroad, 11 Allen (Mass.) 292; Crane E. v. Lippert, 11 U. S. C. C. A. 521; Jensen v. Thomas, 81 Fed. Rep. 578. (11) At least the question of proximate cause is for the jury. Railroad v. Kellogg, 94 U. S. 469; Bones v. Beston, 155 Mass. 344; Trace v. Railroad, 143 N. Y. 182; Payne v. Railroad, 129 Mo. 405; Yongue v. Railroad, 112 S. W. Rep. 985. (12) Defendant is not excused because it did not anticipate what followed. McDermott v. Railroad, 87 Mo. 285; Railroad v. Wood, 77 Iowa 607; Whitton v. Hartin, 163 Mass. 39; Smith v. Fordyce, 190 Mo. 1; Southern Ex. Co. v. Water Co., 54 Ark. 131; Boyce v. Railroad, 120 Mo. App. 168. (13) The injury was exactly such as defendant should have anticipated. Henry v. Denios, 93 Ind. 452; Lanier v. Atlantic Works, 111 Mass. 136.

*Percy Werner* for respondent.

(1)   Respondent's dominion, control and responsibility for the crate ended when it was delivered into the personal custody of the consignee.   Vaughn v. Railroad, 27 R. T. 235 (61 l. 695) ; Mfg. Co. v. Railroad, 38 S. 6 l, 365, 17 S. E. 147; Thompson on Neg., sec. 6636.   (2) The depositing of the crate on the landing was not the proximate cause of the accident.   Wharton on Neg., secs. 437, 438, 439; Griffin v. Jackson L. & P. Co., ·128 Mich. 653; Carter v. Towne, 103 Mass. 507.   (3)   The ' act of respondent's driver in carrying the box beyond the sidewalk, and into the house, was outside the scope of his authority, and not the act of respondent.   Burger v. Railroad, 123 Mo. 679; Hartman v. Muehlebach, 64 Mo. App. 565; Cousins v. Railroad, 66 Mo. 572; Walker v. Railroad, 121 Mo. 575.   (4)   Respondent owed appellant no legal duty at the time of the accident.   Losee v. Clute, 51 N. Y. 494; Kingsland v. Heizer, 110 Mo. 605; Congregation v. Smith, 163 Pa. St. 561; Boswell v. Laird, 8 Col. 469 (68 Am. Dec. 345) ; Fowler v. Griggs, 116 Mich. 425.   (5)   There is no presumption that the box was left at 2 p. m. in the unstable position it was at 5 p. m.   Presumptions run forwards, not backwards.   22 Am. and Eng. Ency. of Law (2 Ed.), p. 1139. (6)   Appellant's fall, as she describes it, was a pure accident, which no reasonable man could have foreseen. Foley v. McMahon, 114 Mo. App. 442; Fuchs v. St. Louis, 167 Mo. 560.   (7)   The law of nuisance has no application to this case.   The crate was not deposited on the landing with any intention or reasonable expectation that it would be allowed to remain there, nor was respondent responsible for its being allowed to remain there.   (8)   The rejected evidence was not admissible under the rule *res inter alios acta*, and would not have affected the conclusion.

STATEMENT.—Action for damages for personal injuries sustained by plaintiff in falling down a flight of steps in an apartment house in the city of St. Louis. One George Kramer received notice from the Illinois Central Railroad Company, that it held a box of glass and two packages containing a kitchen cabinet, to his consignment, charges paid. Whereupon Kramer wrote to the defendant St. Louis Transfer Company, enclosing the notice of the railroad company, and continuing, "Please deliver the goods to 4948C Page boulevard." The defendant received this and thereupon sent the freight by one of its teamsters, with this dray ticket, as we will call it:

"George Kramer, Consignee,

St. Louis, Mo., 4948 Page.

1 Box glass, 2 Packages K. Cabinet. Weight 325. Rate 38, paid. Drayage, St. Louis Depot to Store Door.

St. Louis Transfer Company.

Paid April 3, 1907, 75 cents."

Number 4948 Page Boulevard is an apartment house, containing four apartments, two downstairs and two upstairs. The apartments are numbered 4948A, 4948B, 4948C and 4948D. That of the Kramers is numbered 4948C, and is upstairs on the second floor and there Kramer and his wife resided at the date of delivery of the freight. The driver of defendant's wagon arrived at this apartment house about two o'clock on the day the accident occurred, rang the door bell, and Mrs. Kramer, the wife, appeared, and found the teamster there, who announced that he was the driver for the St. Louis Transfer Company and had a box in his wagon for Mrs. George Kramer, and asked her if she was Mrs. George Kramer. Mrs. Kramer told him she was; whereupon the driver went down to the street and out to his wagon and started in with the box. It appears that the main entrance to these flats was on a level with the sidewalk and from this entrance,

which appears to be a lobby, a flight of five steps ascends to the landing and hallway of the first floor of the flats. This upper landing appears to have been about six feet wide and about four deep. From this first floor hallway, another flight of steps leads up to the second floor, where the Kramer's apartments are situated. When the driver arrived at this landing with the crate of goods, Mrs. Kramer told him she lived on the second floor above, and wanted the package carried up the second flight. The driver said he did not have to carry the box even into the house, that they only had to leave it at the door. Thereupon Mrs. Kramer said: "Well, what am I going to do with it, I cannot bring that box up, and he did not say anything more to me and I said: 'I would like to know how I could get it up; I did not go right and say I would pay him, but I gave him to understand that I would be willing to do something, if he would bring the box up to me. The box was then on the first landing where it finally remained. He hemmed and hawed, I really don't know what he did say, but he made me understand that he would not bring it up and I was a little bit afraid of him, and he brought a receipt, I signed it, or rather I came down to where the box was, because he did not come up again, and I signed the receipt, and that's all there was to it.' " Mrs. Kramer further testified that before signing, she protested against receipting for the box unless it was delivered at her own landing. The receipt which she signed is as follows: "Received of St. Louis Transfer Company, the following articles in good order: St. Louis 4-3-1907. J. C. B. 6451. George Kramer, 4948 Page avenue. 1 box glass, 2 pieces K. cabinet. Freight nothing: Transfer 75 cents. Total .75. (Signed) George Kramer." Whereupon the driver gave Mrs. Kramer the dray ticket heretofore set out. The crate or package is described as being of such dimensions as practically to fill the landing, leaving but

a narrow space on one side to walk around it.   Mrs.
Kramer testified that she had to push her way through
between it and the steps in the same manner that the
plaintiff did, "but I suppose she (plaintiff) pushed it
over more, or something."   The crate remained on the
landing between two and three hours, the testimony
indicating that it was there from two p. m. to five-thirty
p. m., when the accident happened to plaintiff. Whether
it had been shoved around or moved from its original
position, is not in evidence.   About five-thirty p. m.,
Mrs. Saxon, the plaintiff, was coming down the stair-
way from her apartment on the second floor and when
she got to the lower landing, where the crate or box
rested, she saw the box there.   She said the box was
about three or three and one-half feet high and just the
length of the space that was left between the end of
the box and the railing that she came down.   She
thought it filled the landing pretty well from the back
to the front as well as from side to side, but at the east
end there was a space of ten or twelve inches.   She
started through this space to go on down the steps to the
front or entrance door.   In passing through this space,
as she said, and about to go down the first or top step,
she supposed she lost her balance, and in trying to
save herself, threw her hand out and on the box, so
that her weight rested on the corner of the box.   The box
tipped forward and she fell the full length of the five
steps down to the floor below; that is, down to the
floor of the lobby.   It appears that there were cleats
or slats on the under side of the box, running length-
wise, which rested on the floor of the landing, and the
edge of the box appears to have projected about twelve
inches over the edge of the top stair.   The bottom of
the box to which the strips were fastened, rested on
the floor, but there were no strips on that part of it
which projected over the top of the landing.   The weight
of the plaintiff, thrown on the corner of it, tilted it

forward, not however carrying the box down, as it seems that when her weight was taken off of the corner, the box settled back to its former position. These landings and stairways were in the common use of all the tenants of the flats. After the accident, "two boys," as Mrs. Kramer testified, carried it up to her landing. At whose instance they did this, is not in evidence. Plaintiff sustained severe injuries, not apparently being permanently disabled, but still suffering, and she was put to expense for medical attendance, and had also lost time and earnings from being interrupted in her business of sales agent selling statuary on commission. She accordingly instituted this action against the St. Louis Transfer Company, setting out the facts and charging that defendant "caused and permitted to be placed and to remain on the landing," the box or crate, and "that said box or crate, as placed was dangerous and defendant knew and by the exercise of ordinary care could have known that it was dangerous," and that plaintiff before she placed her hand upon the box or crate was "unaware that it was so without support or dangerous and had no reason to suspect the same;" that while plaintiff was attempting to go down the stairway and pass the box, "by reason of the interference and negligently arranged position of said box or crate," she slightly lost her balance; that endeavoring to immediately regain control of herself, and the box or crate appearing to be safe and firmly placed on the landing and capable of sustaining any strain that plaintiff would put on it, she placed her hand and weight on the box and that "immediately upon plaintiff so placing her hand thereupon, (it) tilted forward and aided in causing plaintiff to, and by reason of which said tilting, and by reason of the aforesaid negligently arranged position and interference of said box or crate, plaintiff did then fall and violently strike said stairway and the floor below same; that at all times herein mentioned plaintiff ex-

ercised due and proper care and caution." Setting out her injuries and the effect of the accident on her, plaintiff claims judgment for $4500.

The answer, after admitting the incorporation of defendant, was a general denial of all other allegations. At a trial before the court and jury, there was evidence tending to establish the facts as they are hereinbefore set out. During the progress of the trial, Mrs. Kramer was asked by counsel for plaintiff, if before the box was placed on the first landing, she knew of any custom in the city of St. Louis providing that articles of this kind should be left otherwise than on the premises of the person to whom they were consigned. This was objected to by defendant as immaterial, the objection sustained and plaintiff excepted. On re-direct examination, Mrs. Kramer was asked what the teamster had said about signing the receipt, to which witness answered: "It was what he didn't say that made me sign it. He didn't say anything, but he looked so rough and hateful about it that I didn't know what else to do but sign the receipt." On motion of defendant's counsel, this answer was stricken out as immaterial, and plaintiff excepted. Plaintiff also offered in evidence section 1224, of chapter 12, article 11, of the Revised Code of St. Louis (Ordinance No. 22,902), which is to the effect that any person who shall himself or by another "place upon any highway or other public place, any obstruction not authorized by ordinance, . . . shall be deemed guilty of a misdemeanor and upon conviction shall be fined." This was objected to by defendant as incompetent and irrelevant and not tending to prove any of the issues of the case, and the objection was sustained by the court, plaintiff excepting. During the examination of a witness introduced by plaintiff, the witness was shown the note or order heretofore referred to as written by Kramer and sent to the St. Louis Transfer Company, and asked what was the custom in

St. Louis, at the date of the order, as to the delivery of goods weighing about 325 pounds, under an order similar to that shown witness, the delivery to be at a flat situated in the west end of the city which was on the second floor of the building. This was objected to by defendant because the contract between Kramer and the company was *res inter alios acta,* even if any custom could be engrafted into it, and because the contract was immaterial, and because the memorandum introduced reads "from depot to store door," counsel for plaintiff stating that the object was to show that it was the duty of the defendant under that notice to deliver the package upstairs. The objection was sustained by the court, on the ground that such a custom could not be applicable between the consignee and the transfer company, in the face of the contract, and the testimony was excluded, plaintiff excepting. Plaintiff having concluded her testimony rested, whereupon defendant asked the court to instruct for defendant. The instruction being given, plaintiff took a nonsuit, with leave to move to set the same aside, and afterwards, and in due time filing a motion to set aside the nonsuit and grant a new trial, and that being overruled, duly prayed for and perfected an appeal to this court.

REYNOLDS, P. J. (after stating the facts).— A very able argument and full brief has been filed by the learned counsel for appellant, many authorities being cited in support of their contention against the correctness of the action of the trial court in the exclusion of testimony offered by plaintiff and to the giving of the instruction directing a nonsuit. Most of the authorities, however, that counsel cite are cases arising over what are recognized as nuisances. The petition in this case is bottomed, however, upon the theory of negligence in placing the obstruction in the passageway in a careless manner and allowing it to remain there. In a sense

the act charged may be said to come within the class of acts, the doing or maintenance of which constitute a nuisance. But this is not a case of nuisance *per se,* nor is it so pleaded. Hence we do not think that the cases which deal with nuisances *per se* are applicable to this case. In our view of it, it is a case, the determination of which must turn upon the application of that part of the law of negligence relating to the ascertainment of the proximate cause, a subject upon which a vast amount of learning has been expended and on which almost innumerable decisions have been rendered. We do not conceive that it would serve any good purpose to go into a critical examination of these authorities or a discussion of this very nice question. We agree with the very learned and possibly most voluminous writer on the subject of negligence, the late Judge Seymour D. Thompson, where he says (1 Thompson on Negligence [2 Ed.], sec. 47) : "There can be no fixed and immediate rule upon the subject (of proximate or remote cause) that can be applied to all cases. Much must, therefore, as is often said, depend upon the circumstances of each particular case." The real question in this case is whether the accident which happened and the injuries which the plaintiff undoubtedly received were occasioned by reason of the placing of the box or crate at this landing instead of on the upper landing, upon which the apartment of the Kramers was located, and by reason of placing it on the landing in a careless and unsafe position, and by reason of permitting the box to remain there. The case then resolves itself into the determination of the question as to how far this defendant is responsible to this plaintiff for any or all of these acts.

As to the first proposition, that the defendant was remiss in its duty as a freighter or wagoner, in failing to deliver the box at the place called for in the waybill or dray ticket, or at the place directed by Kramer in

his letter to the defendant, in connection with which the offer was made to prove the customary place of delivery, it is a sufficient and conclusive answer to say, that the only person who could complain of this breach of duty is Kramer. So far as concerns this aspect of the case, there was no contractual relationship, express or implied, between the plaintiff and the defendant, which obligated the defendant to make delivery at any particular place. Without undertaking to go into a full discussion of this particular point, it is sufficient to refer, for what we understand the law to be on this, to the decision in the case of Young v. Waters-Pierce Oil Co., 185 Mo. 634. This case is cited by the learned counsel for the appellant in support of their position as to the liability of this defendant, but we do not think that it sustains their contention under the facts in this case. On the contrary, on this particular proposition of contractual relation, we think the Young Case is against their contention and warrants us in concluding that plaintiff has no connection with the contract between Kramer and the defendant as to the place of delivery. So that any contract or custom as to that is irrelevant.

The second proposition as to the responsibility of defendant for placing the obstruction in the passageway is dependent upon the other proposition as to whether the immediate, the proximate, cause of the accident, was the placing of the crate there, or in allowing it to remain there after is was placed. A very clear statement of the law covering this particular proposition of continuing liability, and one which we accept, is given by Judge BAKER, speaking for the United States Circuit Court of Appeals of the Seventh Circuit, in the case of Crane Elevator Co. v. Lippert, 11 C. C. A. 521, S. C. 63 Fed. 942. In this case, the learned judge says: "Neither the owner of the building, nor another by his

authority, had the right to place an obstruction in the hall which would endanger the safety of those having lawful occasion to pass through it while in the exercise of due care. If the plaintiff in error placed the obstruction complained of in the hall under a grant of authority from the owner of the building, its duties and responsibilities were co-extensive with those of its grantor. If it placed the obstructions in the corridor without the consent of the owner of the building, its responsibility to the defendant in error for his injury would assuredly be no less than if it had acquired such consent." The defendant in this case not only placed the obstruction in the hallway, but was owner of and in control of it down to the date of the accident. This case has been cited and quoted approvingly by our Supreme Court in the case of Young v. Oil Co., supra, at page 663. Hence, if the accident complained of and the resultant injuries occurred through the placing of this obstruction in the passageway, whether securely or insecurely, but in such a way that, as placed, it was the immediate cause of the injury to this plaintiff, and if defendant maintained it there down to the time of the accident, then whether the accident was caused by the first placing or by the subsequent maintenance, the defendant is liable. This brings us then to the decisive point, that is, granting that the act of placing it there was in a careless and negligent manner, whether that act was the immediate cause of the accident or whether, between that careless and improper placing of the crate and the happening of the accident, an intervening cause, which can in law be said to be the immediate and proximate cause, the *causa causans*, had arisen. That is, was it the act of placing or the act of maintaining that directly caused the accident. Referring again to Thompson on Negligence, section 47, and following, we find a very exhaustive discussion of this matter of intervening cause. The doctrine stated is that

the connection between the act claimed as causal and the accident "is usually enfeebled, and the influence of the injurious act controlled, where the wrongful act of a third person intervenes, and where any new agent, introduced by accident or design, becomes more powerful in producing the consequences than the first injurious act." Is the defendant responsible, in law and under the facts, for leaving this crate in the situation in which it was placed by the defendant's agent? Under the facts in evidence in this case, the answer seems clear. No matter whether Mrs. Kramer was terrorized into signing the receipt by the acts and appearance of the teamster when he refused to carry the crate up to the upper landing and insisted upon her receiving and receipting for it where he had placed it, or whether she received it under protest, it is evident that, both in fact and in law, defendant had completed the delivery of this crate to Kramer, the consignee, for there is no pretense that his wife was not authorized to receive and receipt for him. With that delivery the responsibility and the control of the defendant over the crate ceased. While it may be true that if it had not been placed in an insecure position, it might have remained there indefinitely without anybody who passed backward and forward between it and the wall being hurt, we have no right to assume, as against this defendant, that such would be the case. Against this assumption is the right of the defendant to assume that when it delivered the goods, the consignee or the person to whom they were delivered would remove them within a reasonable time, even if it was any concern of the defendant that he would do so. That the delivery was complete and the responsibility of the defendant for the custody of the goods thereafter had terminated, we think very clear from the evidence in this case. We say this without in any way determining whether, between Kramer and the defendant, this was the proper or customary place

of delivery. Kramer, the consignee, or more accurately, his wife, as his agent, received the crate at that place. Whether that was a wrong delivery or not is of no concern to this plaintiff. What does concern the plaintiff is what was the direct cause of the accident.

In the case of Milwaukee, etc., Ry. Co. v. Kellogg, 94 U. S. 469, l. c. 475, Mr. Justice Strong says: "We do not say that even the natural and probable consequences of a wrongful act or omission are in all cases to be chargeable to misfeasance or nonfeasance. They are not when there is a sufficient and independent cause operating between the wrong and the injury. In such a case the resort of the sufferer must be to the originator of the intermediate cause." It is true that in that case, the Supreme Court of the United States held that whether or not the intermediate cause was the immediate cause, was a question of fact to be submitted to the jury on proper instructions. "Where, however," says Judge Thompson, p. 158, sec. 162 (1 Thompson on Negligence [2 Ed.] ), "the presence of an intervening responsible agency is an obvious inference from undisputed facts, it is not error to withhold the case from the jury. . . . When, therefore, it is impossible to determine from the evidence whether the injury proceeded from a cause for which the defendant was responsible, or from a cause for which the defendant was not responsible, the case must be withdrawn from the jury. This is nothing more than an incident of the general proposition prevailing in jury trials, that whether or not the evidence tends to prove a given proposition of fact is always a preliminary question for the judge. Accordingly, it has been laid down that whether or not the evidence tends to prove that the negligence of the defendant was the direct cause of the injury complained of, is a question of law for the court." In the case at bar, and applying these principles to its determination, the trial court determined as a matter of law that the

delivery by defendant to Kramer was such a delivery as divested defendant of all further control of the crate or box. Admittting that it was a careless delivery, in the sense that it was not placed securely upon the landing, it cannot be said that it was within the contemplation or could have been within the contemplation of the defendant, that the crate would be left there in that place and situation indefinitely, and that if so left, injury would result therefrom. In the case at bar, we might assume that if the crate had not been carelessly deposited on the landing and that between the deposit and the accident it had not been shifted, of which fact, however, we have no proof, that the accident would not have occurred; or we might assume that even if deposited insecurely, if it had not been left there for such a length of time, the accident would not have occurred. Plaintiff herself recognizes this, for her petition charges that defendant placed the crate in the hallway and suffered it to remain there and that both acts were the negligent acts which caused the accident. It is clear that defendant had nothing to do with the crate remaining there and was not responsible for that. Having to rest on supposition as to which of the two acts was the proximate cause of the accident, for one of which defendant may be responsible and for the other of which it was not responsible, we have the very simple and common situation, namely, plaintiff has not made out her case, for a jury must act, not on doubtful presumption but on established facts.

On consideration of the facts in this case and of the law we think applicable to it, we agree with the learned trial judge that the accident happening by reason of the crate being left where placed for the length of time it was so left, and defendant not being responsible for this leaving, cannot be held. We find no error in the ruling of the lower court in the admission and exclusion of testimony or in its direction to the jury which

resulted in plaintiff taking a nonsuit. The action of the circuit court in overruling the motion to set aside that nonsuit and to grant a new trial is affirmed. *Nortoni, J.*, dissents; *Goode, J.*, concurs, for the reason that considering the height of the box (three to three and one-half feet) and the space of ten to twelve inches left between it and the wall, a man of common prudence would not anticipate danger of injury to any one in attempting to pass between the box and the wall. Hence there was no negligence on the part of defendant constituting proximate cause of plaintiff's injury.