ELLA v. BOYCE.

1. PLEADING—SUFFICIENCY OF DECLARATION—DEMURRER.
   Where defendant's duty and the breach thereof are clearly to be implied from the facts alleged in a declaration for personal injuries, the failure of specific averments in that regard can be taken advantage of only by demurrer.

2. TORTS—OBSTRUCTING TRAMWAY—NEGLIGENCE.
   The owner of a vessel who knows of the existence of a tramway, over which cars are run day and night, owes a duty to one who is rightfully making use thereof, so to moor his vessel to the dock as not to obstruct such way; and the stretching of a hawser across the track for the purpose of attaching it to a spile on the opposite side, whereby the driver of a tramcar is injured, constitutes actionable negligence.

3. SAME—CONTRACT RELATIONS.
   The fact that the person injured was the servant of the dock owner, having himself no contract relations with the vessel-man, does not affect the latter's liability.

4. SAME—DEFENSES—REASONABLE CARE.
   That one who obstructed a tramway at night, and thereby caused the injury of the driver of a tramcar, believed that the track was used only in the daytime, will not relieve him from liability for his negligence, it being his duty, before obstructing the way, to take proper precautions to ascertain whether or not it was in use.

Error to Kent; Adsit, J.  Submitted February 2, 1897. Decided May 11, 1897.

Case by James Ella against Jonathan Boyce for personal injuries.  From a judgment for plaintiff, defendant brings error.  Affirmed.

*Simonson, Gillett & Courtright* (*Fletcher & Wanty*, of counsel), for appellant.

*Charles A. Withey* (*Dunham & Preston*, of counsel), for appellee.

LONG, C. J.  This is an action on the case for personal injury.  The case was tried before a jury, who returned a verdict in favor of plaintiff for $4,000.  No testimony was offered on behalf of the defendant.  The defendant's first contention is that no actionable negligence is alleged in the declaration, and that none was proved upon the trial, and that, therefore, the court should have directed a verdict for the defendant.  The first count of the declaration charges substantially that on May 3, 1893 (the date of the injury), defendant was the owner of the schooner G. J. Boyce, and the plaintiff was an employé of the Michigan Trust Company, which was at that time in charge of the mill and salt block of R. G. Peters, at Manistee.  Connected with the sawmill and salt block was a long pier or dock, extending 30 rods out into East Lake, and terminating in a warehouse.  The plaintiff was engaged in hauling barrels of salt from the block to the warehouse.  The salt was hauled upon a flat car, which had a capacity of 30 barrels, and was drawn by a horse.  The car was like an ordinary flat car, only smaller.  The tramway was built with iron rails, the track being four feet wide.  Above this tramway was another, which was used for piling lumber, so that, when the dock was well filled, the lower tramway was inclosed by lumber piles.  There were certain down grades in the tramway, where the horse would have to trot to keep

out of the way of the car. The salt block was in operation both day and night, and the car passed over the road every 15 minutes, day and night. The tram, when inclosed by lumber, was very dark at night, so that the driver of the flat car could not see without a light. It was only five feet from the top of the car to the timbers of the tramway overhead, so that a man could not stand safely upon the car. The car was loaded by standing the barrels of salt on end until the car was full, leaving one vacant place at the front for the driver to occupy. The defendant sent his schooner into East Lake for the purpose of loading with lumber at that dock. The declaration further alleges:

"Whereupon said defendant, on said 3d day of May, 1893, * * * by his captain, mate, and other officers and employés, * * * brought said schooner to said dock or pier at 2 o'clock a. m., * * * and there moored her, * * * and, in order to more. securely moor * * * said schooner to said dock, carelessly and negligently caused a large line, hawser, or rope, which was attached to said schooner at a considerable height from the surface of said dock, to be carried or extended * * * to said spile, where it was also * * * fastened directly at the surface of said dock. And the plaintiff, being * * * wholly ignorant of the fact that said vesssel had entered the harbor for the purpose of mooring at said dock, * * * got upon the said flat car at the front thereof, with his feet and legs, from the knees downward, hanging over the end of the car, * * * proceeded * * * along said tramway, * * * and was passing down one of the down grades, * * * when he observed the horse ahead of him. jump some obstruction, and caught sight of said line, hawser, or rope (that being the first intimation said plaintiff had of said obstruction), whereupon he instantly drew up his legs as quickly and as far as possible, but was instantly, without fault on his part, caught between the end and framework of said salt car and said line, hawser, or rope, with terrible force, so that both legs were broken and greatly lacerated, torn, and mangled, between the ankle and knee joints, and the said plaintiff instantly hurled forward from said car to the surface of said dock,

upon his hands and face, and otherwise greatly shocked, bruised, wounded, and injured, to his damage $10,000."

It was shown that there was a row of spiles on each side of the tramway from the shore to the warehouse, so that boats could tie up on either side of the pier, and fasten to these spiles, or to the bent timbers or lumber piles, or all of them, from either side of the pier, without carrying their lines across the tramway; that, at the exact point where the "Boyce" moored, there was no spile on her side of the tramway, but there were spiles on that side a few feet either way above or below, and there was an abundance of opportunity to fasten the mooring line to the bent timbers, lumber piles, etc., at the exact point where she lay, without crossing the tramway; that those in charge of the "Boyce" knew of the tramway and its use, and the only excuse offered at the time of the injury for taking the line that way was that "he [the man in charge] said he did not think they were using the track at night."

The second count alleges that, in consequence of the injury, the plaintiff became shattered in health, and more liable to disease, and has been rendered from thence hitherto unable to earn a livelihood, and that his earning capacity has greatly decreased, and he has been put to great annoyance, suffering, and expense.

Upon the trial the plaintiff testified to the circumstances of the injury as alleged in the declaration. It appears that there were no brakes upon the car at that time; that the track of the tramway was about four feet wide, made of small rails, and built with planking both inside and outside, so that the planking was flush with the rails on both sides. The space for the car wheels was from an inch to an inch and a half wide. The plaintiff's feet were hanging over the car, within a few inches of the planking. It appeared, further, that the schooner was brought to that part of the dock by a local tug; that the spile to which she was fastened was worn and indented on the north side, as if other vessels had been fastened to it before in the same way.

It is first contended by defendant that the declaration does not allege the existence or breach of any duty owing from the defendant to the plaintiff, or allege that the captain of the schooner knew or should have known of the existence of the tramway, or that it was in use at the time; that it does not specify particularly in what respect the crew was negligent, or in what the want of care consisted, but merely makes the general allegation that defendant, by his officers and employés, carelessly and negligently fastened his hawser to a spile; that, in making out negligence, the first requisite is to show the existence of the duty which has been neglected; that such duty is necessarily set forth in the declaration, and the neglect averred; and that a failure to prove it is a failure to make out the plaintiff's case; and, further, that the evidence does not show the existence of any duty owing from the defendant to the plaintiff. Counsel cite, in support of this contention, *Flint, etc., R. Co. v. Stark, 38 Mich. 714. On the other hand, it is contended by the plaintiff that the point that the declaration does not formally set forth a duty and the neglect thereof is raised for the first time; that, if this point be available at all, it must be raised by demurrer. We think the facts set out in the declaration clearly imply a duty upon the part of the defendant not to have so carried his hawser across the track of the tramway as to cause injury to persons using it; and if the defendant sought to take advantage of such defect in the declaration, as not specifically averring the duty and the breach, he should have done so by demurrer. That question cannot be raised for the first time in this court. Geveke v. Railroad Co., 57 Mich. 589; Young v. Railway Co., 56 Mich. 430; Norton v. Colgrove, 41 Mich. 544. In the last case it was held that defects in a declaration are not noticed, if, being amendable, they have not been demurred to. We think that there was some testimony showing that there was a duty owing from the defendant to the plaintiff, under the circumstances here stated. It is shown that those in charge of the "Boyce"

knew of the tramway and its use, and the only excuse was that offered by the man in charge,—that he did not think they were using the tramway at night.

It is next contended that no liability exists, because there were no contract relations between the plaintiff and the defendant; in other words, that, in the absence of a contract, liability exists only when there is a public or imposed duty resting upon the defendant, and that no such duty is shown in this case. We cannot agree with the learned counsel upon this proposition. It was the duty of the owner of the salt block to furnish the. plaintiff with a safe place to work; and if the Michigan Trust Company, in whose employ the plaintiff was, had carelessly and negligently obstructed the way, and the plaintiff had been injured by such negligence, the employer would be held liable. The defendant here cannot escape liability upon the claim that no contract relation existed between him and the plaintiff to furnish a safe place. The right to recover does not depend upon that condition. If the defendant strung this hawser across the tramway under authority from the Michigan Trust Company, his duties and responsibilities were coextensive with the Michigan Trust Company. If the defendant placed the hawser there without the consent of the Michigan Trust Company, his responsibility to the plaintiff for his injury would assuredly be no less than if he had obtained such consent.

In *Corby* v. *Hill*, 4 C. B. (N. S.) 556, the owner of land, having a private road for the use of persons coming to his house, gave permission to A., who was engaged in building on the land, to place materials upon the road. A. placed a quantity of slate there in such a way that the plaintiff, in using the road, sustained damages. It was held that A. was liable to an action. Cockburn, C. J., in that case, speaking of the owners of the soil, said:

"Could they have justified the placing an obstruction across the way whereby an injury was occasioned to one using the way by their invitation? Clearly, they could

not. * * * If that be so, a third person could not
acquire the right to do so under their license or permis-
sion."

This case was cited with approval and followed in
*Crane Elevator Co.* v. *Lippert*, 63 Fed. 942, in which
it was held that one who negligently places obstructions
in the hall of a building is liable to an employé of a ten-
ant of the building who is injured thereby, since such
obstruction constitutes a breach of the duty of the owner
to keep such hallway open to the use of the tenants. The
same case was also cited and approved in *Bennett* v. *Rail-
road Co.*, 102 U. S. 577. See, also, *Schubert* v. *J. R.
Clark Co.*, 49 Minn. 331 (32 Am. St. Rep. 559); *Beau-
champ* v. *Mining Co.*, 50 Mich. 168. As well stated by
counsel for plaintiff here: "The case is the same as
though the defendant, for the convenience of his vessel,
had torn away a portion of the tramroad in the dark-
ness, and let the plaintiff plunge into the lake." It
appears from the testimony that the servants, of the
defendant knew that the tramway was there, but claimed
they did not know it was used in the night. The ques-
tions relating to this part of the case were fully and
fairly submitted to the jury.

Complaint is made that certain of defendant's requests
to charge were not given to the jury. We think the
general charge covered them so far as they were proper
to be given.

Complaint is also made of a specific portion of the
charge. The court said:

"Here was a railroad on a small scale, called a 'tram-
way,' which was in constant use, at least every 15 min-
utes, night and day. I think that, of itself, was a sign of
danger."

It is of this last sentence that complaint is made. The
court, however, in its further charge, said:

"If it was, then the inquiry would necessarily arise
whether or not a person or persons stretching that line
across that track knew it was there, or were the surround-

ings such as to apprise them of that fact. If they did know, then it was the duty of such person or persons to exercise reasonable and ordinary diligence in ascertaining whether or not it was in use before obstructing it with a line."

We think there was no error in this part of the charge. As we have said, the defendant's servants knew the tramway was there. They knew the salt block was in operation. The court left the question to the jury whether the situation and surroundings would indicate that, by stretching the hawser there, it was liable to cause an injury. If the parties did know the situation, and that the tramway was there, it was their duty to ascertain whether or not it was in use before obstructing it with a line.

The question of the plaintiff's contributory negligence was fairly submitted to the jury, and need not be discussed. The question of the ownership of the vessel was also left to the jury, and we think there was some evidence from which the jury might well find that the defendant was the owner of it, and in control of it. We find no other question in the case which warrants discussion. The case was fairly tried and fairly submitted.

The judgment must be affirmed.

The other Justices concurred.