GROESBECK *v.* SHELDEN.

1. NEGLIGENCE — LANDLORD AND TENANT — MASTER AND SERVANT —
    CARE REQUIRED—LICENSE.
       To a servant in the employ of a tenant of real estate, no
       duty was owing by an adjoining proprietor in tearing
       down a building standing on the boundary line of the
       premises, not to take away the supports of a shed or
       lean-to that fell a number of hours afterwards while plain-
       tiff was within the structure, where all the parties in
       interest must have contemplated that the shed would fall,
       and plaintiff was not in the employ of the defendant who
       had control of the operation of pulling down the build-
       ing, with license from both parties in interest.

2. SAME—CONTRIBUTORY NEGLIGENCE.
       Nor was defendant chargeable with failure to warn plain-
       tiff of the progress of the work which must have been
       observed by the injured servant.

Error to Wayne; Hally, J. Submitted January 11,
1915. (Docket No. 59.) Decided April 19, 1915.

Case by Louis Groesbeck against Henry D. Shelden
and others for personal injuries. Judgment for de-
fendant on a directed verdict. Plaintiff brings error.
Affirmed.

*Alex. J. Groesbeck* and *Guy A. Miller,* for appellant.

*Geer, Williams, Martin & Butler,* for appellee Shel-
den.

The relations of the parties are as follows:
Defendant Shelden and Joseph L. Hudson, deceased,
were proprietors whose lands adjoined—Hudson's
estate being east of the estate of Shelden. Defend-
ant Girardin was tenant of Hudson, under what terms
does not appear, and plaintiff, Groesbeck, was em-
ployed by Girardin upon and about the estate as man

of all work. By an interchange of conveyances, the boundary line dividing the estates was changed, and as a consequence a large barn, which had been before a part of the Hudson estate, standing entirely upon Hudson's land, thereafter stood partly upon the land of each proprietor. Ascertaining from Girardin that the building was not useful to him and that he had no desire to have it remain, Mr. Hudson proposed to Mr. Shelden that it be taken down and removed, and that he (Shelden) should demolish it. To this Mr. Shelden consented, and by his direction, and by men under his authority and control, but not under his personal supervison and oversight, the barn was taken down. The work of demolition began at the top of the building. Upon the easterly side of the barn were buildings, one of which projected beyond the north line of the barn; its roof, alongside of the barn, being supported, in part, by the barn—that is to say, it was a lean-to, and the side of the barn was, so far as they were connected, its westerly side. The shed in question had been used as a stable for horses, and contained four box stalls, divided by three partitions running east and west. The large structure, which was demolished, was 40x80 feet in size; the boundary line of the estates passing through its longer axis. Its easterly side was 28 or 30 feet in height. The adjoining and connected shed, or horse barn, was 50x14 feet in size; its easterly side being 8 feet high, and its westerly side, next the large barn, 14 feet high. The easterly side of the barn, below the roof of the lean-to, was of planks. Horses were kept in the shed until Sunday morning preceding the occurrence out of which this suit arises. Plaintiff was absent from the place from Sunday morning (when the siding between the two structures had not been removed) until Tuesday night. He was not near the structure on Wednesday. On Thursday the large

barn was demolished, practically down to its floor and sills. The siding and studding between it and the lean-to had been removed. No new or other supports for the roof of the shed had been introduced, and it stood with some 40 feet in length of the roof supported by a single post or standard about midway of the 40-foot section. The roof found some support north of the large barn in its side wall, and to the south end it was attached to another shed. Thursday afternoon, December 22, 1910, plaintiff went to the large barn. Two men were at work taking up the floor. He discovered, he says, a number of toe weights in the rubbish and began picking them up. There is a dispute of testimony as to what he was doing; but a portion of the roof of the shed fell, pinning him under it and injuring him.

The duty which it is alleged was owed to plaintiff and was breached was—

"to exercise ordinary care and prudence to render said premises, and especially the said farm building above described, reasonably safe for the purposes for which it was being used, and to maintain good and sufficient braces, joints, scantlings, partitions, and supports in the said building, so as not to render it unsafe, dangerous, or insecure in any particular, so that plaintiff as aforesaid, with due care and caution upon his part, might not be subjected to unreasonable or unnecessary hazard or danger; and, further, it became the duty of said defendants, and each and all of them, to notify and warn the plaintiff of any defects in the said building, and of any danger to which he might be subjected while in the use of the premises, and especially the building aforementioned, and that it was the duty of the said defendants to guard and protect the plaintiff while within the said building and in and about the premises from any hazard or danger made possible or caused by the taking away of the joists, scantlings, partitions, or other braces supporting the roof of said building, or in any manner rendering the premises unsafe, dangerous, or hazardous, so

that the said building, and particularly the roof thereof, might collapse and injure plaintiff."

For breach of the duty it is alleged that defendants—

"wrongfully and negligently suffered and permitted the said building to be and continue, and the same was then and there, so negligently, insufficiently, and defectively constructed, that is to say, the joists, braces, scantlings, partitions, and supports had been removed and displaced, and because of the said doings and acts of the defendants herein the said building was rendered unsafe, dangerous, insecure, and hazardous; and that the said defendants and each and all of them failed to render the premises, and especially the farm building aforesaid, reasonably safe for the purposes for which it was being used, and failed to maintain good and sufficient braces, joists, partitions, and supports in said building, so as to render it unsafe or dangerous in any particular, so that the plaintiff, while therein and in the exercise of due care and caution upon his part, might not be subjected to unreasonable or unnecessary hazard or danger, and that said defendants and each of them failed to warn the plaintiff of any defects in the said building and of any danger to which he might be subjected while in the use of the premises, and especially the building aforementioned; and that said defendants and each of them failed to guard and protect the plaintiff while within the said building or premises from any hazard or danger made possible or caused by the taking away of the joists, scantlings, partitions, or other braces supporting the roof of said building, or in any manner rendering the said building or premises unsafe, hazardous, and dangerous, so that the said building, and particularly the roof thereof, might collapse by reason thereof and injure the plaintiff— for all of which, and by reason of one or more of the foregoing acts of negligence of the said defendants, and by means of the premises, the plaintiff with all due care and caution, and without any fault or negligence on his part, then and there, upon the day and year aforesaid, in the common and regular discharge and performance of his duties, went into the said building and while in the act of picking some articles

from the floor thereof the roof of said building, and particularly that part of the said roof immediately over the portion of the building in which plaintiff was engaged, collapsed and fell upon the plaintiff."

A verdict in favor of the estate of Mr. Hudson was directed, as also was one in favor of defendant Girardin, about which rulings no question is presented. A verdict in favor of defendant Shelden was directed, and this ruling plaintiff asks the court to review, asserting that Shelden owed him the duty averred, and that there was testimony tending to prove a breach of it.

Appellee asserts, and made the grounds of the motion for a directed verdict:

(1) There was a fatal variance between declaration and proofs, in that plaintiff's testimony was to the effect that he was not in the shed, but was upon the floor of the large barn, when the roof of the shed fell.

(2) That defendant Shelden had no control over the shed, the roof of which fell, nor had arranged or undertaken to do anything with reference thereto.

(3) The danger was apparent, plaintiff assumed the risk, and by his conduct contributed to his injury.

(4) Plaintiff was not in or about the shed by right, not by invitation, not in the performance of any duty.

Upon the second ground the learned trial judge based the ruling, holding the others to be unsound.

Appellant argues three propositions, which are:

"I. Defendant Shelden, equally with Hudson, owed plaintiff the duty of refraining from taking away the necessary supports of the roof of the horse barn.

"II. Shelden owed the same duty to do the work of removing the large barn carefully and in a manner free from negligence which was owed by Hudson.

"III. There was testimony in this case from which the jury would have been justified in finding that there was negligence on the part of defendant"

—which propositions are again stated, in conclusion, as follows:

"*First.* Defendant Hudson had the right only to cause the large barn to be taken down. This right was granted to him by Girardin and amounted to a license. For any exceeding of this license, or for any negligence in the manner of taking the large barn down, which resulted in injury to the property or the leasehold of the tenant Girardin, or to Girardin personally, or to any person rightfully upon the premises, Hudson was liable to the individual injured.

"*Second.* Shelden was equally liable with Hudson, whether he be considered to have been a licensee, as Hudson was, or whether he was a contractor under Hudson for the removal of the large barn.

"*Third.* The record is conclusive that this work was done negligently and in violation of the license granted by Girardin."

The plaintiff's theory may be, not better, but otherwise, stated in this way: Hudson's license from his tenant was the measure of his own and of Shelden's rights in the premises, and extended no further than to permit demolition of the large barn. If in its demolition other and adjoining portions of the premises were necessarily disturbed, the duty, owed to the tenant and to his servants, was not to make the disturbed portions unsafe. And in argument it is said for appellant:

"Hudson under the lease owed the duty to Girardin to respect the latter's leasehold interest in the horse barn. He also owed the duty to do such work as he was permitted by his tenant to do on the premises in a careful manner, free from negligence. Shelden, in the dual capacity of grantee of part of the large barn subject to the lease, and of contractor under Hudson to remove the easterly half of the barn, stood in the same position as Hudson and owed the same duties. The moment anything was done under the license to remove the barn which impaired the other buildings, namely, the cow barn and the horse barn, a breach of duty occurred, and when coupled with injury to Girardin, or to his servants, there was a valid cause of action. This is particularly true where the interference with the leasehold was of the nature of a neg-

ligent destruction of necessary supports to buildings not included in the license, which interference was likely to result in injury to persons rightfully on the premises, as plaintiff was. The interference with parts of the leased premises not covered by the license from Girardin was a trespass, just as any exceeding by the possessor of a limited right on land of the limits of his right is a trespass."

OSTRANDER, J. (*after stating the facts*). Defendant Shelden's duty in the premises was not other or different from the duty which Mr. Hudson would have owed, had he, instead of Shelden, demolished the barn. The east half of the large barn, as well as the shed which fell, was on Mr. Hudson's land, of which his tenant had possession. Suppose that Hudson had done the work. Between himself and his tenant contract relations existed; otherwise, Hudson could have done as he pleased with his own. For mere breach of any contract relation with the tenant, plaintiff cannot complain. If demolition of the shed had amounted to an eviction of his tenant, the remedy would belong to the tenant, whether what Hudson did was called a trespass or something else. Therefore I do not perceive the applicability to the case of decisions, many of which are cited in appellant's brief, upholding the right of the tenant to damages for injuries to leased premises caused by the landlord or the licensee of the landlord or the tenant. *Barman* v. *Spencer* (Ind.) (49 N. E. 9, 44 L. R. A. 815), and *Aldag* v. *Ott,* 28 Ind. App. 542 (63 N. E. 480), also cited by appellant, belong to a line of cases in which decision rests upon a different principle. In each of them liability was predicated of an affirmative act of the landlord, who created upon the premises a dangerous situation— dangerous for any one who went upon the premises. After quoting from *Aldag* v. *Ott, supra,* the attorney for the appellant says that the same principle was applied in *Peerless Manfg. Co.* v. *Bagley,* 126 Mich.

225 (85 N. W. 568, 53 L. R. A. 285, 86 Am. St. Rep. 537), when it will be at once apparent, the decisions being examined, that an entirely different principle was applied.

There is another line of decisions, of which *Corby* v. *Hill*, 4 C. B. (N. S.) 556, *Crane Elevator Co.* v. *Lippert*, 63 Fed. 942 (11 C. C. A. 521), and *Ella* v. *Boyce*, 112 Mich. 552 (70 N. W. 1106), are examples, which are relied upon by appellant, which differ little, if any, in principle, from *Barman* v. *Spencer*, and *Aldag* v. *Ott*, but which also decide that one having a license to do something upon the premises of another may not, as licensee, do what the licensor himself had no right to do. In each of them, the person who created the nuisance was the defendant, and was held liable to the one who was injured. The principle applied in *Corby* v. *Hill, supra*, is thus stated by Cockburn, C. J., who said:

"It seems to me that the very case from which the learned counsel seeks to distinguish this is the case now before us. The proprietors of the soil held out an allurement whereby the plaintiff was induced to come upon the place in question: they held out this road to all persons having occasion to proceed to the asylum as the means of access thereto.  *  *  * Having, so to speak, dedicated the way to such of the general public as might have occasion to use it for that purpose, and having held it out as a safe and convenient mode of access to the establishment, without any reservation, it was not competent for them to place thereon any obstruction calculated to render the road unsafe, and likely to cause injury to those persons to whom they held it out as a way along which they might safely go. If that be so, a third person could not acquire the right to do so under their license or permission."

See, also, *Morrison* v. *Carpenter*, 179 Mich. 207 (146 N. W. 106), in which is applied the familiar rule that, having licensed one to use premises, the owner and licensor cannot thereafter, while the license con-

tinues, make the premises used by the licensee more dangerous to the user. *Bennett* v. *Railroad Co.,* 102 U. S. 577.

In the case at bar there are no facts raising a duty on the part of Shelden (or Hudson) to Girardin, or to his servant, the plaintiff, to support the roof of the shed. Nothing was done not presumably contemplated by Hudson, Shelden, Girardin, and any and every one else who knew anything about the situation there. If the large barn was demolished, it would remove to that extent the westerly support for the shed which fell. Shelden did not know what Hudson or his tenant would thereafter do with the shed— whether it would be removed or repaired. Hudson and his tenant had not discussed the matter. Assuming that, nevertheless, Shelden having been the active agent in creating the situation, a duty would arise upon his part to discover that situation to any one rightfully using the premises, no breach of such a duty is made out. The condition remaining after the barn was removed was apparent, to plaintiff as well as to any one else who looked at the shed. The shed was not for use, nor was it contemplated by any one that it would be used, as it stood. Whatever of value it had contained had been removed to the tenant's, and presumably to the owner's, satisfaction. No trap was set for plaintiff, nor was he deceived or deluded by anything Shelden had done, or failed to do. Nothing could have been told him which his vision did not disclose to him. The principle, therefore, of the cases last mentioned, has no application. Plaintiff was most unfortunate, but it must be held that his injuries resulted from no breach of duty owed to him by Shelden.

It is not necessary to discuss the questions of variance, of plaintiff's assumption of whatever risk there was, or of his contributory negligence. If the testimony of the tenant is believed, plaintiff was told

to keep away from the particular portion of the premises. If the testimony of others is believed, plaintiff's own conduct, after being warned, in using a crowbar under the shed, may have caused the roof to fall upon him.

The judgment is affirmed.

BROOKE, C. J., and MCALVAY, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.