MIRANDA, PLAINTIFF AND APPELLANT, *v.* PORTO RICO RAILWAY, LIGHT & POWER COMPANY, DEFENDANT AND APPELLANT.

APPEAL from the District Court of San Juan in an Action for Damages.

No. 2550.—Decided April 17, 1923.

DAMAGES—NEGLIGENCE—PLEADING.—In every case involving actionable negligence there are three essential elements: The existence of a duty on the part of the defendant to protect the plaintiff from the injury of which he complains; a failure by the defendant to perform that duty; an injury to the plaintiff from such failure. The absence of any one of these elements renders a complaint bad. In this case the complaint does not dis-

close the existence of any duty whatsoever on the part of the defendant and owing to the plaintiff.

ID.—ID.—ID.—DEMURRER—APPEAL.—Failure to aver specifically the duty of the defendant and its non-performance should be taken advantage of by demurrer and the objection can not be made for the first time in the appellate court; but a defendant who demurs to the complaint for want of facts sufficient to constitute a cause of action can not be required to specify as grounds for demurrer the essential elements omitted.

ID.—ID.—EVIDENCE.—The finding that the plaintiff was not guilty of contributory negligence, in the face of all the evidence to the contrary, and the finding that the accident occurred in a public street while the plaintiff was on a substitute for a sidewalk of the said street, notwithstanding the total absence of any evidence in this regard, precludes an affirmance of the judgment, independently of any question as to the sufficiency of the complaint.

The facts are stated in the opinion.

*Messrs. Guerra Mondragón & Soldevilla* for the plaintiff-appellant.

*Messrs. J. H. Brown, P. Amado Rivera* and *M. Acosta Velarde* for the defendant-appellant.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

The complaint herein alleges in substance:

"That the defendant is a corporation organized under the laws of Porto Rico and engaged in the transportation of passengers in electric cars between San Juan, Santurce and Rio Piedras, its main office being in this city of San Juan.

"That at about 8.30 in the morning of October 7, 1918, electric car No. 32 of the defendant company was being operated from the Park to San Juan by motorman Nicasio Feliciano, No. 145, then an employee of the defendant company and engaged in the ordinary discharge of his duty, and descended the slope from Stop 20 to Stop 19 at great speed notwithstanding the sign to "Reduce speed" attached to a post situate at a couple of meters from the spot where the accident took place; that the motorman was not sounding his bell and as a consequence the plaintiff was struck by the aforesaid car and her right shin bone fractured, necessitating the amputation of her leg at the knee on the same day—October 7, 1918—at about 10 a. m. And the plaintiff further alleges that the accident was due to the negligence and heedless temerity of the said motorman."

Nine months after the filing of a demurrer for want of facts sufficient to constitute a cause of action the question

was "duly argued," taken under advisement and finally decided adversely to the defendant. This ruling is made the subject of the first assignment.

"The right to maintain an action depends upon the existence of what is termed a cause of action, which is ordinarily considered as involving the combination of a right on the part of plaintiff and a violation of such right by defendant." 1 C. J. p. 951.

"In every case involving actionable negligence there are necessarily three essential elements: (1) The existence of a duty on the part of the defendant to protect the plaintiff from the injury of which he complains; (2) a failure by the defendant to perform that duty; and (3) an injury to the plaintiff from such failure; and the absence of any one of these elements renders a complaint bad." Note to *King* v. *Oregon Short Line R. Co.,* 59 L. R. A., 209, at p. 214.

Such self-evident truisms, however trite, should not be wholly ignored by the trial courts.

Obviously the complaint first above mentioned does not disclose the existence of any duty whatsoever on the part of the defendant and owing to the plaintiff, either to reduce the speed of the car or to ring the bell. Possibly we might surmise that plaintiff was a passenger and that the warning as to reduction of speed, being intended for the protection of passengers, inured to the benefit of plaintiff, save that such a theory is negatived to some extent by the alleged failure to ring the bell and practically excluded by the further statement that plaintiff was struck (*arrollada*) by the car. On the other hand, unless we are to take judicial notice of the geographical location of the stops mentioned by number in the complaint and of the physical conditions surrounding the particular locality so sought to be identified, there is nothing whatever in the complaint to suggest even that the accident occurred at a place where the presence of plaintiff or of any other person in close proximity to the tracks or right of way of defendant was to be reasonably

anticipated, and by the exercise of reasonable care on the part of the motorman, might have been observed in time to avoid the accident. The importance of these matters will become more apparent perhaps when we come to consider the evidence and the findings made by the trial judge.

But counsel for appellee insist that, defendant having failed expressly to specify in the demurrer the failure to allege any fact pointing to the existence of a duty on the part of defendant towards plaintiff, this question cannot be raised on appeal, citing 29 Cyc. 567. The nearest approval to this proposition in the text so referred to, is the following statement (Italics ours):

"Failure to *specifically* aver the duty of defendant and the breach should be taken advantage of by demurrer and the objection cannot be made for the first time in the appellate court."

And, turning to the solitary case mentioned in the note, to wit, *Ella* v. *Boyce,* 70 N. W. 1106, we find that what the Michigan court said was this (Italics ours):

"On the other hand, it is contended by the plaintiff that the point that the declaration does not *formally* set forth a breach of duty and the neglect thereof is raised for the first time; that, if this point be available at all, it must be raised by demurrer. We think the facts set out in the declaration *clearly imply* a duty upon the part of the defendant not to have so carried his hawser across the track of the tramway as to cause injury to persons using it; and if the defendant sought to take advantage *of such defect* in the declaration, *as not specifically* averring the duty and the breach, he should have done so by demurrer. That question cannot be raised for the first time in this court."

The answer to so much of the brief for appellee as seeks to go beyond this and to fasten upon a defendant demurring for want of facts sufficient to constitute a cause of action the duty of specifying as grounds for demurrer the omissions complained of will be found in 31 Cyc. at page 281 j.

and in Kerr's Code of Civil Procedure, 2nd ed., part 1, sec. 431, page 880, paragraphs 21 *et seq.*

We ourselves have been quite liberal in treating complaints as amended to conform to the evidence under certain conditions, and do not now overlook the fact that:

"It has been held also that even if a complaint is subject to demurrer for failure to state a material fact essential to the recovery, and a demurrer is overruled, a judgment for the plaintiff will not be reversed on appeal where it appears to be right, and the omitted fact was the principal issue on the trial; but the court will treat the complaint as amended to conform to the proof, if necessary to support the judgment." Note to *Ellinghouse* v. *Ajax Live Stock Co.*, L. R. A. 1916 D, page 836, at page 859.

We need not stop now to inquire how far other courts have gone towards extending the rule in exceptional circumstances to include a total failure to set forth either directly or by fair implication the most vital and basic element of the right of action, notwithstanding the timely interposition of a demurrer for want of sufficient facts. It is reasonably safe to assume that whatever justification there may be for such an application of the doctrine as to amendment on appeal would be found in the absence of any other reversible error, coupled with a clear conviction that the ends of justice had been attained without serious prejudice to any substantial right. It will suffice to say, therefore, that we are unable to reach such a conclusion in the instant case.

The judgment below is based upon the following findings:

"From the whole of the evidence examined and as a result of the ocular inspection we are of the opinion that on October 7, 1918, and about 8 a. m. the plaintiff left Mrs. Barleta's house after receiving a lesson in phonography. The house of Mrs. Barleta is situated between Stops 19 and 20; there is a small garden attached and the fence is very close to the car track.

"Between the track and the fence the distance is slightly over

one meter and this is reduced when the car passes, for the reason that the car is wider than the space between the two rails.

The court also finds that the plaintiff is of age, fatherless and the daughter of an indigent mother, and that on October 7, 1918, at about 8 a. m. an electric car struck the plaintiff between Stops 19 and 20, hurling her to the ground and fracturing her right leg, and that as a result of this accident the plaintiff had to be operated on shortly thereafter in the Porto Rico Sanatorium by Dr. Belaval, who amputated her right leg a little above the knee, and that the accident was the result of the negligence of defendant's motorman, such negligence consisting in his failure to sound the bell or stop the car in time. The motorman Nicasio Feliciano was not watching the track, he was not looking ahead, and the court is of the opinion that if the motorman had been attending to his duty he would have seen the plaintiff and avoided the accident, since he would have rung the bell and been in a position to stop the car, for the court holds that the car was running without current and at a minimum speed.

"The plaintiff suffered intense physical pain, not only at the time of the accident but also before and after the operation to which she was subjected, and that she has also endured mental anguish at finding herself permanently deprived of an important member of her body and is now compelled to live within the confines of her house and engage in household work, the accident having diminished to a great extent her capacity for labor.

"The scene of the accident is a public street and the passage in controversy is used by the public and takes the place of the sidewalks that ought to be there. Although the aforesaid passage is narrow, it is not so narrow that a person cannot walk through and remain in it without personal risk at the time an electric car is passing along the track.

"The plaintiff was not guilty of contributory negligence."

In addition to the assignment already discussed, appellant insists that

II.

"The court erred when it found that the scene of the accident is a public street.

III.

"The court erred in holding that the motorman, defendant's

employee, was guilty of negligence, which was the proximate cause
of the accident.

IV.

"The court erred in finding that the plaintiff was not guilty of
contributory negligence.

V.

"The court erred in rendering judgment in favor of the plain-
tiff, because according to the weight and preponderance of the
evidence the motorman, defendant's employee, was not guilty of
negligence constituting the proximate cause of the accident; but
the weight and preponderance of the evidence clearly shows that
the plaintiff was guilty of negligence constituting the proximate
cause of the accident."

There is no evidence to support the conclusion that the
place where the accident occurred is a public street and
that the narrow strip of soil traveled by plaintiff is a substi-
tute for the sidewalk that ought to occupy the same space.
The record is as barren of all proof as is the complaint of
any averment in this regard.

And it is no answer to this to say that the trial judge
viewed the site of the accident, for the reason that four
photographs, taken on the day of the event and introduced
in evidence by plaintiff, enable us to see practically all that
the trial judge could have seen, in so far as this feature of
the case is concerned.

These photographs show what appears to be a public
road, or perhaps a street, parallel to the tracks and to the
road bed of the railway. This road bed rises somewhat
above the level of the street, or at least quite perceptibly
above the level of the outer edge of the road or gutter. The
rails in turn stand out above the surface of the railway
road bed, which is covered with grass and other vegetation,
both between and for some distance outside the rails. In
spots where the road bed is not so over-grown the upper
surfaces of the ties are visible, although practically flush

with the ground. The line of demarcation between this strip of vegetation and the street, or at least the macadamized or traveled portion thereof, is clean cut and unmistakable.

There is planking between the rails at intervals and culverts or approaches of concrete, or other seamless material, are seen rising from the street to the surface of the rails at these apparently private crossings; but no cross streets are shown in the immediate vicinity. Pedestrians are found upon both sides of the traveled portion of the road. In one picture they seem to be more numerous upon the side opposite the tracks, but in none of the photographs is anyone shown to be traveling along the strip of ground between the tracks and the adjacent front yard fences.

It is also true that these pictures disclose the existence of a path or strip of bare ground between the tracks and the fence referred to in the findings. We may concede for the sake of argument that the court below might have assumed that this strip of soil had not been made with a hoe or similar instrument, for some purpose other than the convenience of the public; and, if made by travel, then that it had not been worn by the feet of cattle or of telegraph or telephone or trolley-wire linemen, or other employees of the defendant or other companies using the poles shown in the pictures, but by general and more or less continuous public use. Then perhaps the trial judge would not have been wholly unwarranted in drawing the inference that the company had knowledge of such use and therefore had good reason to anticipate the presence of plaintiff at the spot where some of the testimony tends to show the accident occurred. But to say that this is tantamount to the bald proposition that the path forms a part of a public street, and in fact is a substitute for what ought to be a sidewalk, would be a manifest and "most unmitigated misstatement."

In passing we may add that plaintiff herself says:

"I always took my lesson at the doorway opening on the balcony and saw that all the world passed by there on the way to the chapel, and I also had made use of the way on other occasions."

This statement, however, is weakened a moment later by the following:

"I took my lesson in the sitting room, in front of the door. The door was open. I heard the cars when they passed. I did not see them because my back was turned; I took my lesson with my back to the door."

Miss Barleta also says that she used this path in going to the chapel, "which fronts on the grounds of the institute," and that she had seen other people pass that way.

But inasmuch as the judgment below is not based upon any such theory as the testimony of these witnesses might tend to suggest, we need not dwell upon this feature of the case.

Not only is there absolutely no basis in the record for the statement that plaintiff was not guilty of contributory negligence, but all the testimony points conclusively the other way.

Whether or not the motorman by the exercise of reasonable care might have avoided the accident, notwithstanding the contributory negligence of plaintiff, is a question that was not considered at all by the court below and need not be determined at this time.

The finding that plaintiff was not guilty of contributory negligence, in the face of all the evidence to the contrary, and the finding that the accident occurred in a public street while plaintiff was upon a sidewalk thereof, or a substitute for such sidewalk, notwithstanding the total absence of any evidence in this regard, preclude an affirmance of the judgment appealed from, independently of any question as to the sufficiency of the complaint.

With reference to the question of negligence on the part of the motorman and the causal connection, if any, between such negligence and the injuries complained of, defendant is entitled at least to a decision based upon the evidence in this regard, viewed in the light of the law applicable to the facts established at the trial as distinguished from the erroneous findings last above mentioned. The result below not having been so reached, we are unable to say that defendant has not been prejudiced in any substantial right.

As a general rule, of course, all issues of fact should be determined in the first instance by the trial judge, after hearing the testimony as it comes from the lips of the witnesses on the stand. We abstain, therefore, from passing upon the questions raised by the remaining assignments of error.

The judgment appealed from must be reversed and the case remanded with leave to amend the complaint within ten days from the date of the entry of our judgment in the court below and for further proceedings not inconsistent herewith.

*Reversed and remanded.*

Chief Justice Del Toro and Justices Wolf, Aldrey and Franco Soto concurred.